Barbara SCHUTKOWSKI,
Appellant (Plaintiff),

v.

Dwain CAREY and Robert D.
Rodekohr, Appellees
(Defendants).

No. 85–101.

Supreme Court of Wyoming.

Sept. 30, 1986.

Douglas J. Moench, Jr., of Cole and Moench, Cheyenne, for appellant.

Paul B. Godfrey and Julie Nye Tiedeken of Godfrey & Sundahl, Cheyenne, for appellee Robert D. Rodekohr.

George Zunker of Urbigkit, Whitehead, Zunker & Davidson, Cheyenne for appellee Dwain Carey.

Before THOMAS, C.J., BROWN * and CARDINE, JJ., and ROSE and ROONEY, JJ. (Retired).

BROWN, Justice.

Appellant Barbara Schutkowski, a sky diving student injured during her first jump, filed a negligence complaint against appellees Dwain Carey and Robert Rodekohr, her skydiving instructors.[1] The district court, in a summary judgment for appellees, found that a "Release and Indemnity Agreement" signed by appellant excused the instructors from all liability for injury, including consequences arising from negligence. On appeal Ms. Schutkowski raises the following issues:

"1. Did the trial court err in determining that the contracting parties intended for the release to excuse appellees from liability caused by their negligence?

"2. Did error occur in failing to strictly construe the release as merely excusing liability for injuries that ordinarily and inevitably occur without fault?

"3. Did the trial court err in following the rationale of a minority view?"

We will affirm.

The basic facts are undisputed. Appellant employed appellees to teach her to sky dive. Before her first jump, she signed an agreement releasing appellees from all claims for personal injury resulting from parachuting and related activities. On July 1, 1979, appellant made her first parachute jump, flying with instructor Carey and pilot Rodekohr. During a difficult landing some distance from the target Ms. Schutkowski suffered back, arm and leg injuries. She filed an action charging that Carey and Rodekohr were negligent in failing to warn her of the risks of parachuting, and failing to adequately instruct and direct her during sky diving procedures.

In their answers to the complaint and subsequent motions for summary judgment, appellees contended that appellant's claims were barred by the liability release agreement. In this document Ms. Schutkowski acknowledged that for consideration and permission to participate in the course,

" * * * I Barbara Schutkowski of Cheyenne, Wy for myself, my heirs * * * do hereby *fully and forever release* and discharge the said Cheyenne Parachute Club and Bob Rodekohr, Cheyenne, Wyo, and their divisions, and their employees * * * and *all persons whomsoever directly or indirectly liable, from any and all other claims and demands,* actions, and causes of action, damages, costs, loss of services, expenses, and any and all other claims of damages whatsoever both in law and in equity, on ac-

* Reassigned to BROWN, J., July 18, 1986.

1. Steven D. Johnson was also joined as a defendant. Barbara Schutkowski's case against him was dismissed with prejudice on a motion by his estate on March 18, 1985.

count of, or *in any way resulting from, personal injuries,* conscious suffering, death, or property damages sustained by me, arising out of aircraft flights, parachute jumps, or any other means of lift, ascent, or descent from an aircraft * * * on the ground or in flight, and meaning and intending to include herein all such personal injuries, conscious suffering, death or property damage resulting from or in any way connected with or arising out of instructions, training, and ground or air operations incidental thereto, and in consideration of the foregoing premises I * * * hereby expressly stipulate, covenant and agree to indemnify and hold forever harmless the said Cheyenne Parachute Club * * * from any and all actions * * * and any and all other claims for damages whatsoever which may hereafter arise * * * from my negligent, willful or wanton, or intentional act or actions. (Emphasis added.)

"The terms of this release and indemnification agreement are contractual and not a mere recital and contain the entire agreement between the parties hereto."

The district court found that the agreement released appellees from liability for negligence. An order granting summary judgment for defendants was entered from which Ms. Schutkowski appeals.

## SUMMARY JUDGMENT

The standard of review for summary judgment appeals has been well established by this court.

"When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. *Randolph v. Gilpatrick Construction Company, Inc.,* Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.,* Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company,* Wyo., 694 P.2d 113 (1985). Material fact has been defined as one which, if proved,

would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Samuel Mares Post No. 8, American Legion, Department of *Wyoming v. Board of County Commissioners of the County of Converse,* Wyo., 697 P.2d 1040 (1985). Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Bancroft v. Jagusch,* Wyo., 611 P.2d 819 (1980)." *Garner v. Hickman,* 709 P.2d 407, 410 (1985).

The litigants here agree on the essential facts and admit that the release was signed by appellee. However, they disagree on the interpretation of the contract. Interpretation and construction are questions of law for the court to decide. *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980). Therefore, issues concerning the validity of the exculpatory clause and the intent of the agreement were properly before the court on summary judgment. *Product Research Associates v. Pacific Telephone & Telegraph Company,* 16 Cal. App.3d 651, 94 Cal.Rpt. 216 (1971); *Jones v. Dressel,* Colo., 623 P.2d 370 (1981); *Ciofalo v. Vic Tanney Gyms,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961).

## EXCULPATORY CLAUSE

Wyoming courts enforce exculpatory clauses releasing parties from liability for injury or damages resulting from negligence if the clause is not contrary to public policy. *Kost v. First National Bank of Greybull,* Wyo., 684 P.2d 819 (1984); *Tate v. Mountain States Telegraph and Telephone Company,* Wyo., 647 P.2d 58 (1982); *Brittain v. Booth,* Wyo., 601 P.2d 532 (1979). Generally, specific agreements absolving participants and proprietors from negligence liability during hazardous recreational activities are enforceable, subject to willful misconduct limitations. *Cain v. Cleveland Parachute Training Center,* 9

O.R.B. 28, 9 Ohio App.3d 27, 457 N.E.2d 1185 (1983). The Ohio court observed in Cain:

"A participant in recreational activity is free to contract with the proprietor of such activity so as to relieve the proprietor of responsibility for damages or injuries to the participant caused by the negligence of the proprietor, except when caused by willful or wanton misconduct. [Citations omitted.]" Id., 457 N.E.2d at 1187.

In *Jones v. Dressel*, supra, the Colorado Supreme Court developed a four-part test to determine whether a negligence exculpatory clause is valid. Pennsylvania courts have also adopted standards which closely parallel those in the Colorado case. *Liability Assurance Corporation v. Greenville Business Men's Association*, 423 Pa. 288, 224 A.2d 620 (1966). In reaching its determination a court considers (1) whether a duty to the public exists; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. Only exculpatory agreements meeting these requirements are enforceable. *Jones v. Dressel*, supra.

■ Private recreational businesses generally do not qualify as services demanding a special duty to the public, nor are their services of a special, highly necessary nature. *Jones v. Dressel*, supra. The California Supreme Court, in *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 32 Cal.Rpt. 33, 36, 383 P.2d 441, 445–446, 6 A.L.R.3d 693 (1963), described the elements of an agreement affecting the public interest:

"[The agreement] concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public,

which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it * * *. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. * * "

■ The service provided by appellees was not a matter of practical necessity for any member of the public. It was not an essential service, so no decisive bargaining advantage existed. Further, no evidence suggests that appellant was unfairly pressured into signing the agreement or that she was deprived of an opportunity to understand its implications. The agreement meets the first three criteria for determining if the exculpatory clause is valid.

### INTENT TO EXCUSE LIABILITY FOR NEGLIGENCE

■ Finally, we must determine if the release clearly shows the intent to eliminate appellee's liability for negligent acts. Public policy disfavors clauses exculpating liability for negligence, and a court must closely scrutinize such clauses. *Kansas City Power & Light Company v. United Telephone Company of Kansas, Inc.*, 458 F.2d 177 (10th Cir.1972); *Gross v. Sweet*, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979); *Atlas Mutual Insurance Company v. Moore Dry Kiln Company*, 38 Or.App. 111, 589 P.2d 1134 (1979). The exculpatory clause must clearly and unequivocally demonstrate the parties' intent to eliminate liability for negligence.[2] The question here is whether "negligence" or other specific words are required to clearly show intent.

---

**2.** Cases involving this issue have used similar language to express the standard. See, e.g., *Keystone Aeronautics Corporation v. R.J. Enstrom Corporation*, 499 F.2d 146 (3d Cir.1974) ("greatest particularity"); *Gross v. Sweet*, 49

N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979) ("unmistakable language"); *Boll v. Sharpe & Dohme*, 281 App.Div. 568, 121 N.Y. S.2d 20 (1953) ("clear and explicit language").

Courts disagree on the specific language needed to show such intent. In some jurisdictions the word "negligence" or equally precise language is required in order to bar liability for negligent acts. *Kansas City Power & Light Company v. United Telephone Company of Kansas, Inc.,* supra; *Gross v. Sweet,* supra; *Boll v. Sharpe & Dohme,* 281 App.Div. 568, 121 N.Y.S.2d 20 (1953). While these jurisdictions may reluctantly accept contracts absolving parties from liability for negligence, they insist on exacting, "unequivocal" language. *Gross v. Sweet,* supra; and *Willard Van Dyke Products, Inc. v. Eastman Kodak Company,* 12 N.Y.2d 301, 239 N.Y.S.2d 337, 189 N.E.2d 693 (1963).

Conversely, the absence of the word "negligence" is not fatal to an exculpatory clause in many courts if the terms of the contract clearly show intent to extinguish liability. *Cain v. Cleveland Parachute Training Center,* supra; *LeSueur Creamery, Inc. v. Haskon, Inc.,* 660 F.2d 342 (8th Cir. (1981), cert. denied 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); *Blide v. Rainier Mountaineering, Inc.,* 30 Wash. App. 571, 636 P.2d 492 (1981); *Hewitt v. Miller,* 11 Wash.App. 72, 521 P.2d 244 (1974).[3] The facts in *Cain v. Cleveland Parachute Training Center,* supra, were very similar to the case before us. A sky diving student signed a liability release stating:

> " ' * * * I covenant for myself, my estate, executor, heirs, and assigns not to file suit or initiate any claim procedure in respect to any personal injuries, property damages, or losses I may experience or sustain arising directly or indirectly out of my activities hereunder.' " Id., at 1186.

The Ohio court, while narrowly construing the language of the exculpatory clause, found that it expressed an intent to limit liability for negligence even though the words used did not include "negligence."

Jurisdictions which interpret exculpatory language based on the clear intent of the parties rather than specific "negligence" terminology better characterize Wyoming law. When interpreting a contract our primary concern is to determine the intent of the parties. *Rouse v. Munroe,* Wyo., 658 P.2d 74 (1983); *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65 (1982); *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* supra. The parties' intentions are determined by giving effect to all of the contract language. *Sunburst Exploration, Inc. v. Jensen,* Wyo., 635 P.2d 822 (1981). We interpret the contract considering the meaning of the document as a whole. *Kost v. First National Bank of Greybull,* Wyo., 684 P.2d 819 (1984). Additionally, the court must consider the surrounding circumstances, the relationship of the parties, the nature of the subject matter and the apparent purpose in making the contract. *Peters Grazing Association v. Legerski,* Wyo., 544 P.2d 449 (1975), reh. denied 546 P.2d 189 (1976).

Considering all of the language of the agreement in context, it is clear that the parties' intent was to release appellees from liability for negligence. The contract wording focuses particular attention on the unconditional nature of the exculpatory agreement. It specifically and repeatedly exempts appellants from any responsibility for potential consequences. See *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* Wyo., 662 P.2d 96 (1983). By signing the release, Barbara Schutkowski voluntarily waived her potential claims against

> "all persons whomsoever directly or indirectly liable, from *any and all* * * * claims and demands, actions and causes

---

3. These contract examples were accepted by the courts: *Hewitt v. Miller,* 11 Wash.App. 72, 521 P.2d 244, 248 (1974) ("neither this class nor its owners * * * may be held liable in any way for any occurrence * * * I hereby personally assume all risks * * * I further release [all SCUBA agents] for any harm * * *."); *Blide v. Rainier Mountaineering, Inc.,* 30 Wash.App. 571, 636 P.2d 492, 493 (1981) ("I * * * hereby assume all [specified risks] and will hold [defendant] harmless from any and all liability, actions * * * demands of every kind and nature whatsoever. * * * *"); *Lee v. Sun Valley Company,* 107 Idaho 976, 695 P.2d 361, 362 (1984) ("* * * harmless for every and all claim which may arise from injury * * *.").

of action * * * and *any and all other claims* of damages *whatsoever both in law and in equity,"* and *"in any way* resulting from, personal injuries * * *." (Emphasis added.)

Common sense is one of the leading characteristics of contract interpretation and construction. *Marathon Oil Co. v. Kleppe,* 407 F.Supp. 1301 (D.Wyo.1975), aff'd 556 F.2d 982 (10th Cir.1977); and 17 Am.Jur.2d Contracts § 243, p. 630 (1964). In construing this contract the nature of the service and the purpose of the release must be considered. *Peters Grazing Association v. Legerski,* supra. In *Gross v. Sweet,* 424 N.Y.S.2d at 372, 400 N.E.2d at 313, a parachuting case similar to this one, the well-reasoned dissent contends:

> "The activity on which plaintiff was about to embark under the tutelage of defendants was a hazardous one at best, but virtually the only claims that he might have had against them [the defendants] should he sustain personal injuries or property damage would be claims resulting from fault or negligence of defendants. The majority reads the agreement 'merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant, to those who participate in such a physically demanding sport.' [Citation omitted.] But of what significance or practical effect is such a release? It is difficult to conceive of any claim other than one predicated on negligence; personal injuries or property damage occasioned without negligence by one or both of the defendants would give rise to no cause of action at all. The release then, if construed as not including claims predicated on negligence, releases nothing and is meaningless and a nullity. * * * [A] requirement that there be included the word 'negligence' or a description of the specific acts of misconduct pleaded in the complaint (as plaintiff would contend for) would be a reversion to the 'semantic stereotypes,' which we have now abjured. [Citations.] * * * "

In this case it is difficult to envision any claim other than one based on negligence that appellant might have had against appellees. If it was not the intent of the parties to release appellees from liability for negligent acts, we see little purpose in the Release and Indemnity Agreement.

Adult private parties should not enter into a contract for hazardous recreational services lightly. The agreement language is unambiguous; it clearly shows that appellant intended to relinquish all liability claims she might accrue against appellees. We will enforce the exculpatory clause.

The order granting summary judgment for appellees is affirmed.

THOMAS, Chief Justice, dissenting with whom ROSE, Justice, joins.

I must dissent from the disposition of this case in accordance with the majority opinion. While the holding of the majority opinion might appear appropriate to all in the context of an effort to learn the skill of "sky-diving" or parachuting, I submit that the result might not seem as appropriate in other contexts. In my judgment a different rule would fit more aptly into the overall policy of the State of Wyoming.

In a case involving an indemnity agreement this court said:

> "Generally, contracts exculpating one from the consequences of his own acts are looked upon with disfavor by the courts. *Kansas City Power & Light Company v. United Telephone Company of Kansas, Inc.,* 458 F.2d 177 (10th Cir.1972). Therefore, an agreement for indemnity is construed strictly against the indemnitee, particularly when the indemnitee was the drafter of the instrument. *Allison Steel Manufacturing Co. v. Superior Court in and for County of Pima,* 22 Ariz.App. 76, 523 P.2d 803 (1974). If the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of doubt. *Mostyn v. Delaware L. & W.R. Co.,* 160 F.2d

15 (2nd Cir.1947). The test is whether the contract language specifically focuses attention on the fact that by the agreement the indemnitor was assuming liability for indemnitee's own negligence. *Sweetman v. Strescon Industries, Inc.,* Del.Super., 389 A.2d 1319 (1978)." *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* Wyo., 662 P.2d 96, 99 (1983).

In considering a settlement agreement which we held was required to clearly express the intent of the parties to release other tortfeasors we said:

"The thrust of the public policy announced in § 1–1–113(a)(ii) is to retain the liability of tortfeasors, thus abrogating the common-law release rule. Therefore the phrase 'unless its terms so provide' should be narrowly construed. *Beck v. Cianchetti,* [1 Ohio St.3d 231, 439 N.E.2d 417 (1982)] supra. To permit discharge of noncontributing tortfeasors where a plaintiff has received only partial compensation, based upon broad, general language which does not identify the tortfeasors, effectively perpetuates the English rule in contravention of the legislature's intention, *Beck v. Cianchetti,* supra. The phrase 'unless its terms so provide' (§ 1–1–113(a)(i)) compels the releasor to name or otherwise specifically identify the released tortfeasors in order that the intent of the parties be fulfilled. *Beck v. Cianchetti,* supra. These resolutions are fortified, not only by *Beck v. Cianchetti,* but by other well-reasoned opinions. See *Alaska Airlines, Inc. v. Sweat,* [Alaska, 568 P.2d 916 (1977)] supra; *Young v. State,* [Alaska, 455 P.2d 889 (1969)] supra; *Alsup v. Firestone Tire & Rubber Company,* [101 Ill.2d 196, 77 Ill.Dec. 738, 461 N.E.2d 361 (1984)] supra; *Robertson v. McCarte,* [13 Mass.App. 441, 433 N.E.2d 1262 (1982)] supra; *Duncan v. Cessna Aircraft Company,* [Tex., 665 S.W.2d 414 (1984)] supra; *McMillen v. Klingensmith,* [Tex., 467 S.W.2d 193 (1971)] supra.

"Such a rule will most nearly assure that courts will be able to identify the intention of the parties with certainty, and it will have the effect of eliminating the ambiguity factor which, without the rule, will forever plague release agreements in tort actions." *Bjork v. Chrysler Corporation,* Wyo., 702 P.2d 146, 162–163 (1985).

I would opt for the line of authority which requires that the word "negligence" be included in an exculpatory agreement such as this. See *Jones v. Dressel,* Colo., 623 P.2d 370 (1981); *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979); *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961); *Boll v. Sharp & Dohme,* 281 App.Div. 568, 121 N.Y.S.2d 20 (1953). This requirement is most likely to alert the other party to the extent of the release which he is granting in the contract, which usually is prepared in advance. In many respects this simply would seem to be fair.

As I indicated the result may well be deemed appropriate with respect to parachuting activities. I wonder how comfortable this court and others will feel with such a rule when it is invoked in favor of day care centers; youth activity organizations; health clubs; public or private schools; landlords; or any of a myriad of activities to which this concept logically can be extended. Because of my concern with the public policy implications of this holding by the court, which I submit may be rather far-reaching, I would vote to reverse the disposition by the trial court and require that if one is to be released from the consequences of his own negligence the release must say exactly that and use the word negligence specifically.