Marc STREET, Plaintiff,

v.

DARWIN RANCH, INC., Defendant.

No. 99–CV–140–B.

United States District Court,
D. Wyoming.

Nov. 12, 1999.

Richard Wolf, Cheyenne, WY, for plaintiff.

Greg Greenlee, Cheyenne, WY, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court on Defendant's motion to dismiss. This case requires the Court to determine the legal effect of a Participation, Waiver and Release Agreement (the "Release") signed by Plaintiff prior to his participation in a horse ride provided by Defendant. Because Defendant presented, and the Court considered, material extraneous to the pleadings, the motion is treated as one for summary judgment.[1]

The parties agree to the material facts necessary to decide the validity and enforceability of the Release. In particular,

---

1. The Federal Rules of Civil Procedure provide:

 If, on a motion ... for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

 Fed.R.Civ.P. 12(b). In this case, the Court considered the Participation, Waiver, and Release Agreement and the authenticating affidavit of Loring Woodman, President, General Manager, and custodian of records for Defendant. Both parties treated the motion as a

Defendant, while not conceding negligence on the part of itself or its agents, does admit that Plaintiff was injured as a result of a fall from Defendant's horse. (Def.'s Answer ¶ 4.) For his part, Plaintiff does not deny that he signed the Release. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.) Of course the parties diverge regarding the legal significance of the Release. According to Defendant, the Release acts as a complete bar to Plaintiff's negligence claim.[2] Plaintiff counters that the Release is unenforceable as against public policy. After reading the briefs, hearing oral arguments, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

## Background

Defendant, Darwin Ranch, Inc., operates a dude ranch in Teton County, Wyoming. On July 16, 1995, Plaintiff, Marc Street, an invitee of Defendant's ranch, participated in a horseback trail ride. During the ride, Plaintiff fell from his horse and injured his leg. Prior to the outing, Plaintiff signed the Release, in which he: (1) acknowledged and assumed certain integral risks of horse-related activities,[3] and (2) waived any claims against Defendant arising out of an injury caused by participation in recreational activities, including injuries caused by Defendant's negligence.[4] Plaintiff commenced this suit alleging that Defendant was negligent when, among other unspecified acts, it "gave plaintiff a horse to ride which it knew or had reason to know was dangerous for plaintiff to ride; did not properly evaluate whether or not plaintiff's horse was appropriate for plaintiff, an inexperienced rider; and did not assist or help plaintiff, an inexperienced rider." (Pl.'s Compl. ¶ 6.)

## Summary Judgment Standard

A party is entitled to summary judgment where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When applying this

---

motion for summary judgment in their briefs. Thus, the motion is converted to one for summary judgment.

2. Defendant further insists that Plaintiff's negligence claim is defeated by Wyoming's Recreation Safety Act, Wyo.Stat.Ann. §§ 1–1–121 to 1–1–123 (1999). Because the Court finds the Release dispositive, it does not reach this argument.

3. The Release provides that Plaintiff understood and acknowledged certain integral risks, hazards, and dangers including:

risks arising out of any activity involving horses, mules or donkeys which are unpredictable and uncontrollable in all circumstances, which are reactions to the conduct and actions of other riders and persons, which without warning kick, bite, stomp, stumble, rear, bolt, fall down, and react to sudden movements, noise, light, vehicles, other animals or objects, and which involve equipment that may break or otherwise fail and other riders who may not control their animals and cause a collision or other unpredictable consequence. . . .

4. The Release states:

I, for myself, my heirs, successors, executors and subrogors, hereby KNOWINGLY AND INTENTIONALLY WAIVE AND RELEASE, INDEMNIFY AND HOLD HARMLESS DARWIN RANCH, INC., its owners, agents and employees, from and against any and all claims, actions, causes of action, liabilities, suits, expenses (including reasonable attorney's fees) and NEGLIGENCE of any kind or nature, whether foreseen or unforseen, arising directly or indirectly out of any damage, loss, injury, paralysis, or death to me or my property as a result of my participation in the recreational activities on a ranch and in a wilderness environment in mountainous terrain, whether such damage, loss, injury, paralysis or death results from NEGLIGENCE of Darwin Ranch, Inc., or its owners, agents, or employees, or from some other cause. I AGREE that neither I, or anyone acting on my behalf, will make a claim against, sue or otherwise maintain action of any kind against Darwin Ranch, Inc. as a result of any injury, paralysis or death to me.

standard, the court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996).

### Analysis

■■■■ Under Wyoming law, exculpatory agreements such as the Release at issue here are enforced unless the exculpatory clause is contrary to public policy. *See Schutkowski v. Carey*, 725 P.2d 1057, 1059 (Wyo.1986). In deciding whether an exculpatory clause contravenes public policy, Wyoming courts consider: (1) whether a duty to the public exists; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the parties expressed their intentions in clear and unambiguous language. *See id.* at 1060. If the exculpatory agreement passes muster under these factors, the party signing the agreement cannot bring a negligence action against the released party.[5] *See Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987)

### 1. Public Duty and Nature of the Service Offered

■■■■ The Release is consistent with Wyoming public policy under *Schutlowski* factors one and two. Without denigrating the eminent role of equine pursuits in the history, culture, and economy of Wyoming, the Court concludes that Defendant's services plainly are not of sufficient public import to engender a public duty. In Wyoming, "[p]rivate recreational businesses generally do not qualify as services demanding a special duty to the public...."

*Schutkowski*, 725 P.2d at 1060 (holding that skydiving instructors do not owe a public duty); *see also Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1066 (Wyo.1988) (holding that organizers of the "Ironman Decathlon" ski race do not owe a duty to the public). Rather, service providers owe a public duty under Wyoming law only if " '[t]he party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.' " *Milligan*, 754 P.2d at 1066 (quoting *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 445 (1963)). Because recreational trail rides are neither of great importance to the public, nor a practical necessity to any member of the public, Defendant owed no public duty.

Despite the great weight of Wyoming precedent to the contrary, Plaintiff raises two points to support his contention that equine providers do owe a public duty. First, Plaintiff contends that all recreational activity providers owe a public duty under general premises liability principles. (Pl.'s.Resp. to Def.'s Mot. to Dismiss at 5–6.) Second, Plaintiff asserts that Wyoming's Recreation Safety Act (the "Act") establishes a public policy which creates a public duty for equine providers. (*Id.* at 6–7.) The Court finds neither argument convincing.

Plaintiff cites *Dalury v. S–K–I, Ltd.*, 164 Vt. 329, 670 A.2d 795 (1995), for the proposition that providers of hazardous recreational activities owe a public duty of care to all business invitees. *Dalury* did indeed conclude, based on principles underlying business invitee law, that ski resorts affect the public interest to such a degree as to warrant imposition of a public duty on ski

---

5. Claims for wilful and wanton misconduct, however, cannot be waived by an exculpatory agreement. *See Boehm*, 748 P.2d at 710. In this case, Plaintiff has alleged only simple negligence and has not alleged that Defendant acted wilfully or wantonly. (Pl.'s Compl. ¶¶ 5–6.) Even if the Court were to construe Plaintiff's complaint as alleging wilful and wanton misconduct, Plaintiff has produced no evidence to support such an allegation.

resort operators. 670 A.2d at 799–800. However, *Dalury* finds little company in this conclusion. *See* Randy J. Sutton, Annotation, *Validity, construction, and effect of agreement exempting operator of amusement facility from liability for personal injury or death of patron,* 54 A.L.R.5th 513, 528 (observing that *Dalury* is the only case the author could find holding that an amusement facility operator owed a public duty). More important, *Dalury* squarely conflicts with Wyoming law. *See Schutkowski,* 725 P.2d at 1060 (holding that private recreation providers generally owe no public duty). In fact, *Dalury* explicitly considered and rejected the Wyoming Supreme Court's judgment that only businesses offering essential public services owe a public duty. 670 A.2d at 798–99 (citing *Milligan,* 754 P.2d at 1066). While Plaintiff may be correct that a trail ride outfitter would be found to owe a public duty in Vermont, such is not the case in Wyoming.

Nor does the Court find any merit in Plaintiff's suggestion that the Recreation Safety Act establishes a public policy from which springs a public duty. As an initial matter, the Court finds no fault with Plaintiff's premise that a release agreement is invalid as against public policy if it conflicts with a standard of care imposed by a safety statute. For example, *Murphy v. American River Runners,* 186 W.Va. 310, 412 S.E.2d 504 (1991), a case heavily relied upon by Plaintiff, held that a whitewater rafting outfitter could not be exculpated from statutorily imposed duties. *Murphy* involved a statute that required " 'all commercial whitewater guides ... [to] conform to the standard of care expected of members of their profession.' " 512 S.E.2d at 512 (quoting W.Va.Code § 20–3B–3(b)). The statute also established a commercial whitewater advisory board to promulgate more specific whitewater safety requirements. *Murphy,* 412 S.E.2d at 512 n. 9 (quoting W.Va.Code § 20–3B–3(a)).

Where Plaintiff finds a statutory duty of care for equine providers in the Recreation Safety Act, however, remains a mystery. While many other states have enacted statutes that attempt to define the duties of hazardous recreation activity providers, Wyoming has not done so. *See* Wyo.Stat. Ann. § 1–1–122, 123; Cathy Hansen and Steve Duerr, *Recreational Injuries & Inherent Risks: Wyoming's Recreation Safety Act,* 28 Land & Water L.Rev. 149, 168 (1993). In fact, the Wyoming legislature explicitly considered establishing statutory equine provider duties before enacting the 1993 amendments to the Act, but ultimately decided not to do so. *See* Catherine Hansen–Stamp, *Recreational Injuries & Inherent Risks: Wyoming's Recreation Safety Act—An Update,* 33 Land & Water L.Rev. 249, 261–62 (1998) (citing H.R.0159, 52nd Leg. (Wyo.1992)). Instead, the operative portion of the Act provides:

> (a) Any person who takes part in any sport or recreational opportunity assumes the inherent risk in that sport or recreational opportunity, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreation opportunity.

> (b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

Wyo.Stat.Ann. § 1–1–123.

Plaintiff's position is particularly puzzling because, despite the word "safety" in the title, the true public policy expressed by the Act is to benefit the recreation industry and Wyoming economy by eliminating provider liability for inherent recreation activity risks. *See* Hansen & Duerr, 28 Land & Water L.Rev. at 170–71; *see also* Wyo.Stat.Ann. § 1–1–123(a), (b). The

Release is, at the very least, consistent with the public policy expressed by the Act, if not in furtherance of it. Plaintiff's position that the Release violates a policy expressed by the Act is, to be frank, bewildering.

## 2. Fair Contracting

 The third *Schutkowski* factor, which requires the exculpatory clause to be fairly entered into, is closely related to the first two elements. It addresses the concern that " '[a]s a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.' " *Schutkowski*, 725 P.2d at 1060 (quoting *Tunkl*, 32 Cal.Rptr. 33, 383 P.2d at 445–46). Releases exculpating employers, hospitals, common carriers, or utilities are disfavored because the individual "often has no real choice or alternative and is, therefore, at the mercy of the other party." *Milligan*, 754 P.2d at 1066.

 Because trail rides are a recreational, nonessential service, Defendant did not possess the type of market power that would invalidate the Release. A similar situation was addressed in *Milligan*, where the representative of a skier killed while participating in a ski race claimed a release was unfair because it was prepared solely by the resort and offered on a "take it or leave it" basis. *Id.* at 1067. The court held that the release was fairly entered into because

> [the resort] did not force [the skier] to ski in the race. [The skier] could have chosen not to race. Skiing in the race was not a matter of practical necessity, and putting on the race was not an essential service. Nor was skiing in the race the only reasonable alternative. Thus, no decisive bargaining advantage or disadvantage existed.

*Id.* Trail rides, like ski races, are not essential services or practical necessities. Plaintiff was hardly at Defendant's mercy, and could have refused the trail ride, and attendant Release, without threat to life or limb. In Judge Cardozo's timeless words, "the timorous may stay at home." *Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479, 166 N.E. 173, 174 (1929).

## 3. Clear and Unambiguous Language

 The Release is adequate under the fourth *Schutkowski* factor requiring the exculpatory clause to evidence the parties' intent to release the exculpated party from negligence liability in clear and unambiguous language. *See Milligan*, 754 P.2d at 1067. A contract is ambiguous if it is " 'capable of being understood in more ways than one. It is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' " *Id.* (quoting *Bulis v. Wells*, 565 P.2d 487, 490 (Wyo. 1977)). The Release at issue here is hardly vague or ambiguous on the issue of whether the parties intended to release Defendant from negligence liability. Indeed, it could not be clearer.

Disputes generally arise under the fourth *Schutkowski* factor when the exculpatory agreement does not contain the word "negligence," although even then the agreement may be sufficiently clear. In *Milligan*, for example, exculpatory language exempting a party from "legal claims or legal liability of any kind ... whether foreseen or unforseen" was held to evidence an intention to release the party from negligence liability. *Id.* at 1068. Language releasing claims against "all persons whomsoever directly or indirectly liable, from any and all ... claims and demands, actions and causes of action ... and any and all other claims or damages whatsoever both in law and in equity and in any way resulting from personal injuries" was clear enough to waive negli-

gence liability. *Schutkowski*, 725 P.2d at 1061–62.

The Release blatantly and unambiguously specifies that Plaintiff waived negligence claims against Defendant for all injuries resulting from participation in the recreational activity, see *supra* note 4, making it even more clear than the exculpatory clauses found valid in *Schutkowski* and *Milligan*. Common sense must guide the Court's interpretation of the Release, see *Schutkowski*, 725 P.2d at 1062, and common sense dictates that the intent of the parties was to release Defendant from negligence liability for exactly the type of injury sustained by Plaintiff. As the *Milligan* court observed in interpreting a release signed prior to a ski race, "[i]t is difficult to envision any other intent of the parties than to release [the resort] from liability for negligence.... If this were not the intent, there would be little purpose in the release at all." 754 P.2d at 1068. Similarly, it strains credulity for Plaintiff to assert that the Release was something other than a release of negligence liability.

In sum, the Release is valid and enforceable because it does not concern an essential service or practical necessity, and it expresses unambiguously the intent of the parties to exculpate Defendant from negligence liability. *See Schutkowski*, 725 P.2d at 1060–62. Plaintiff argues, however, that the negligent act of "knowingly giving a dangerous horse to plaintiff to ride" falls outside the Release's coverage because that specific hazard was not identified in the Release. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 7–8). Even if the Court accepts as true Plaintiff's unsubstantiated allegation that the injury resulted from the non-inherent risk of negligent horse selection,[6] the scope of the release is not limited to the integral risks specified therein.

The Release consists of two distinct and independent components. First

is the Release's identification of integral risks, which the Court views as the parties' attempt to define the hazards that Defendant had no duty to mitigate. Under Wyoming law, Defendant had no duty to protect against inherent risks, and the failure to do so is not negligent. *See* Wyo.Stat. Ann. § 1–1–123(b); Hansen & Duerr, 28 Land & Water L.Rev. at 155–158. Thus, no waiver is necessary for inherent risks and the language quoted in note 4 would be a nullity if it were limited to the inherent risks enumerated in the Release.

The second component of the Release, the language quoted in note 4, is not superfluous text, but is an expression of the parties' unambiguous agreement to release Defendant from liability for negligent acts which, by definition, are not inherent risks. *See* Hansen & Duerr, 28 Land & Water L.Rev. at 155–158. The language of the Release is clear. Plaintiff waived claims for "NEGLIGENCE of any kind or nature, whether foreseen or unforseen, arising directly or indirectly out of any ... injury ... as a result of my participation in the recreational activities ... whether such ... injury results from NEGLIGENCE of Darwin Ranch, Inc .... or from some other cause." Clearly, the waiver of negligence claims for recreation activity—related injuries is not limited to the enumerated integral risks.

There is no dispute that Plaintiff's injury arose directly or indirectly out of Plaintiff's participation in a recreation activity, namely, the trail ride. Thus, under the valid and enforceable Release, Plaintiff's negligence claim was waived whether the injury was caused by one of the enumerated integral risks or by some other act of negligence on the part of Defendant.

### Conclusion

The Court holds as a matter of law that the Release entered into by Plaintiff and

---

6. Plaintiff has produced no affidavit, deposition, or other evidence substantiating the allegation that Defendant's horse had abnormally dangerous propensities or that Defendant or its agents knew of any abnormal dangers associated with the horse given to Plaintiff.

Defendant is valid and enforceable under Wyoming law and that Plaintiff's injury falls within the Release's coverage. Consequently, Plaintiff cannot maintain this negligence action and Defendant's motion for summary judgment is hereby **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.