**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LINDY GRACE CUNNINGHAM;
MICHAEL CHAD CUNNINGHAM,

     Plaintiffs - Appellants,

v.

JACKSON HOLE MOUNTAIN RESORT
CORPORATION, a Wyoming corporation,

     Defendant - Appellee.

No. 16-8016
(D.C. No. 2:15-CV-00007-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Lindy and Chad Cunningham sued Jackson Hole Mountain Resort Corporation

(JHMR)[1] for injuries Mrs. Cunningham sustained when she collided with a trail sign

while skiing. The district court granted summary judgment for JHMR, concluding the

Cunninghams' claims were barred by the terms of a release Mrs. Cunningham signed

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Throughout this opinion, we use the acronym JHMR to refer to both the Jackson Hole Mountain Resort property and the corporation that owns the resort, Jackson Hole Mountain Resort Corporation.

when she rented ski equipment from JHMR's ski shop. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

During a January 2013 vacation to Teton Village, Wyoming, Lindy Cunningham rented ski equipment from a JHMR shop located at the base of the resort's ski area. During the rental process, Mrs. Cunningham signed a rental agreement,[2] which included the following language (the release):

> I [the signor] further agree to forever release, discharge, waive, save and hold harmless, indemnify, and defend JHMR . . . from and against any and all claims, demands, causes of action, liabilities, actions, and any and all medical expenses or other related expenses, including damage to persons and property, asserted by others, by me, or on my behalf, my estate, executors, heirs, or assigns brought under any theory of legal liability, INCLUDING NEGLIGENCE, arising directly or indirectly out of my use of the facilities, ski area or ski lifts at JHMR, or my presence on JHMR premises.

On January 14, while skiing at JHMR, Mr. Cunningham followed behind Mrs. Cunningham, filming her on his helmet-mounted GoPro camera. Footage from the

---

[2] The Cunninghams contend there is a genuine dispute of fact regarding whether Mrs. Cunningham actually signed the rental agreement because, in response to requests for admission, Mrs. Cunningham asserted she viewed the agreement on a computer screen and not in the form presented during discovery. But there is no dispute Mrs. Cunningham's physical signature appears on the rental agreement. And there is no dispute JHMR provides the same agreement to every rental customer on a computer screen before printing a hard copy for the customer's signature. Moreover, this evidence relates solely to the third factor in our analysis of the release's enforceability, which requires consideration of "whether the agreement was fairly entered into." *Schutkowski v. Carey*, 725 P.2d 1057, 1060 (Wyo. 1986). As explained below, Mrs. Cunningham raised arguments only with respect to the fourth factor and therefore waived the arguments for which the signature evidence would be relevant. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Accordingly, the evidence does not provide a basis to reverse the district court's grant of summary judgment.

camera shows Mrs. Cunningham fall toward the right side of the trail, slide, and then collide with a trail sign. The accident severely injured Mrs. Cunningham's spine, rendering her a quadriplegic.

The Cunninghams sued JHMR, claiming negligence, premises liability, negligent training and supervision, and loss of consortium. After limited discovery, the district court concluded the Cunninghams' claims were barred by the release, and it therefore granted summary judgment in JHMR's favor.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). "Because this is a diversity case, we apply the substantive law of Wyoming, the forum state." *Id.* Specifically, we "must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). If "no state cases exist on a point, we turn to other state court decisions, federal decisions, and the general weight and trend of authority." *Grand Targhee*, 308 F.3d at 1100 (citation omitted). Here, the district court concluded the release signed by Mrs. Cunningham was valid and enforceable under Wyoming law and encompassed all of the Cunninghams' claims. In addition, the district court determined JHMR did not act willfully or wantonly.[3] We affirm each of the district court's determinations.

_____

[3] JHMR also argued the claims were barred by the Wyoming Recreation Safety Act (WRSA), Wyo. Stat. Ann. §§ 1-1-121 to -123, because Mrs. Cunningham hit a trail sign, which is an inherent risk of skiing. But the district court denied summary judgment

3

## A.  *Enforceability and Scope of the Release*

Wyoming courts will enforce clauses releasing parties from liability for injury or damages so long as the clause is not contrary to public policy. *Schutkowski v. Carey*, 725 P.2d 1057, 1059 (Wyo. 1986). And as relevant here, "[g]enerally, specific agreements absolving participants and proprietors from negligence liability during hazardous recreational activities are enforceable, subject to willful misconduct limitations." *Id.*; *see also Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 956 (Wyo. 1999) ("Where willful and wanton misconduct is shown, an otherwise valid release is not enforceable."). To determine the enforceability of a particular exculpatory clause, the Wyoming Supreme Court applies a four-part test:

> In reaching its determination a court considers . . . (1) whether a duty to the public exists; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. Only exculpatory agreements meeting these requirements are enforceable.

*Schutkowski*, 725 P.2d at 1060; *see also Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987) ("An agreement passing scrutiny under these factors is valid, denying the signing party an action in negligence."). In application, the Wyoming Supreme Court has essentially combined the first two factors, stating that "[a] duty to the public exists if the nature of the business or service affects the public interest and the service performed is considered an essential service." *Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1066 (Wyo. 1988). The third factor has also been discussed in conjunction

---

on this basis, and neither party has appealed this determination. Accordingly, we do not address it here.

4

with the first two. *See Schutkowski*, 725 P.2d at 1060 ("The service provided by appellees was not a matter of practical necessity for any member of the public. It was not an essential service, so no decisive bargaining advantage existed.").

On appeal, the Cunninghams make arguments related to the first three factors by asserting (1) JHMR owes a duty to the public because it operates on United States Forest Service land pursuant to a special use permit and is subject to federal regulation, (2) the release is contrary to public policy as expressed in the Wyoming Recreation Safety Act, and (3) the release unlawfully bars negligence actions arising from essential services such as the provision of emergency medical services at the JHMR clinic. But the Cunninghams did not raise these arguments before the district court. In their opposition to summary judgment, the Cunninghams focused exclusively on the fourth factor: whether the intention of the parties is expressed in clear and unambiguous language. In addition, the Cunninghams failed to present evidence to the district court in support of these new arguments, which is why they ask this court to take judicial notice of the requisite facts.[4] Although the Cunninghams maintain they raised the public-duty issue below, the discussion was limited to isolated references in the *facts* section of their memorandum to the district court, which merely recited the ownership interest of the Forest Service and the alleged existence of a special use permit. The Cunninghams did not provide analysis or argument to the district court related to JHMR's public duty or the other two arguments now raised on appeal. Under these circumstances, the Cunninghams have

---

[4] Because the Cunninghams' proffered evidence relates only to arguments not preserved for appeal, we deny the motion for judicial notice.

forfeited these arguments, and we do not consider them for the first time on appeal. *See*

*Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798 (10th

Cir. 1996) ("Vague, arguable references to a point in the district court proceedings do not

preserve the issue on appeal." (alterations, ellipsis, and citation omitted)).

We therefore limit our review to the fourth factor, which "requires us to determine

whether the release agreement evidences the parties' intent to abrogate negligence

liability in clear and unambiguous language." *Boehm*, 748 P.2d at 711. To make this

determination, we must "closely scrutinize" the exculpatory clause. *Schutkowksi*, 725

P.2d at 1060. In doing so, we must interpret the clause "using traditional contract

principles and considering the meaning of the document as a whole." *Massengill v.*

*S.M.A.R.T. Sports Med. Clinic, P.C.*, 996 P.2d 1132, 1135 (Wyo. 2000). In addition, "the

nature of the service and the purpose of the release must be considered." *Schutkowski*,

725 P.2d at 1062. Applying these principles, the district court concluded the rental

agreement clearly and unambiguously released JHMR from liability for all of the

Cunninghams' claims. We agree.

> When Mrs. Cunningham signed the rental agreement, she released JHMR
>
> from and against any and all claims, demands, causes of action, liabilities, actions, and any and all medical expenses or other related expenses, including damage to persons and property, asserted by others, by me, or on my behalf, my estate, executors, heirs, or assigns brought under any theory of legal liability, INCLUDING NEGLIGENCE, arising directly or indirectly out of my use of the facilities, ski area or ski lifts at JHMR, or my presence on JHMR premises.

This language broadly bars all claims related to Mrs. Cunningham's use of facilities and

services at JHMR. Although the Cunninghams argue their negligence claims should not

be barred by this provision, the Wyoming Supreme Court has determined on multiple occasions that exculpatory clauses "clearly and unambiguously" express the parties' intent to release negligence liability even where the clauses do not mention negligence specifically. *See, e.g.*, *Milligan*, 754 P.2d at 1068; *Boehm*, 748 P.2d at 711–12; *Schutkowski*, 725 P.2d at 1060–62. We conclude the Wyoming Supreme Court would reach the same result here, where the exculpatory clause expressly emphasizes that it "INCLUDE[S] NEGLIGENCE." *See Street v. Darwin Ranch, Inc.*, 75 F. Supp. 2d 1296, 1302 (D. Wyo. 1999) ("The Release blatantly and unambiguously specifies that Plaintiff waived negligence claims against Defendant for all injuries resulting from participation in the recreational activity, making it even more clear than the exculpatory clauses found valid in *Schutkowski* and *Milligan*." (internal cross-reference omitted)).

Nonetheless, the Cunninghams contend the release is unclear and/or ambiguous because the exculpatory language is "hidden," the release is internally conflicted, and the release is overly broad. The Cunninghams also contend that, even if the release is clear and unambiguous, the parties mutually misunderstood the release to cover only rental-equipment-related injuries and that, by its terms, the release applies only to injuries arising from inherent hazards of skiing. We address each of these arguments in turn.

### 1. "Hidden" Exculpatory Language

The Cunninghams first assert the exculpatory clause was too inconspicuous to be "clear and unambiguous." We have found no case imposing a "conspicuousness"

requirement to exculpatory clauses under Wyoming law.[5] But even assuming

enforcement of a sufficiently inconspicuous clause could offend public policy, the release

here is not inconspicuous.

The Cunninghams maintain the exculpatory language is buried in a long block of

text, written in small typeface, and presented in the rental agreement under circumstances

which make it appear as though the whole agreement pertains only to equipment rental.

But the district court correctly explained, "While the Release is part of the Rental

Agreement, *it makes up the bulk of the agreement*." The entire rental agreement fills one

side of one piece of paper, with the release provision placed front and center. The release

is presented under a heading that states "RENTAL WARNING, RELEASE OF

LIABILITY AND INDEMNITY AGREEMENT – PLEASE READ CAREFULLY

BEFORE SIGNING." Assumption of risk and waiver of liability are addressed in the first

two paragraphs of the release, and they are clearly set apart from one another. Moreover,

the first sentence of the release signals that its scope is broader than the rental of

equipment, as it discusses the dangers of skiing in general. The exculpatory provision

also stands out because the phrase "INCLUDING NEGLIGENCE" is written in all caps.

_____

[5] The only case the Cunninghams cite that identified such a requirement in the context of a liability waiver for recreational activity is *Kolosnitsyn v. Crystal Mountain, Inc.*, No. C08-05035-RBL, 2009 WL 2855491 (W.D. Wash. Aug. 28, 2009). There, the district court considered whether Crystal Mountain's liability release was conspicuous, but it did so under Washington state law, which deems exculpatory clauses "enforceable unless they violate public policy, are inconspicuous, or the negligence falls below standards established by law." *Id.* at *3 (citing *Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 10 (Wash. 1992)). Unlike Washington, Wyoming deems exculpatory clauses enforceable unless they violate public policy; it does not consider the two additional exceptions to enforceability that Washington recognizes. *See, e.g.*, *Massengill v. S.M.A.R.T. Sports Med. Clinic, P.C.*, 996 P.2d 1132, 1136 (Wyo. 2000).

Furthermore, the last paragraph of the release states in part, "**I HAVE CAREFULLY READ THIS RELEASE, UNDERSTAND ITS CONTENTS, AND UNDERSTAND THAT THE TERMS OF THIS DOCUMENT ARE CONTRACTUAL . . . . I AM AWARE THAT I AM RELEASING CERTAIN LEGAL RIGHTS THAT I OTHERWISE MAY HAVE . . . .**" While the print is necessarily small, it is readable even in the further-shrunken form presented in the record on appeal. And as the district court observed, "there is nothing to suggest that [Mrs.] Cunningham requested larger print or indicated that she could not read the release." For these reasons, even if conspicuousness is a requirement under Wyoming law, the release here was conspicuous.

**2. Internal Conflict**

The Cunninghams next cite *Rowan v. Vail Holdings, Inc.*, 31 F. Supp. 2d 889, 899–900 (D. Colo. 1998), and argue the release is ambiguous because it is both consistent and inconsistent with the Wyoming Recreation Safety Act (WRSA). But the Cunninghams' reliance on *Rowan* is misplaced. There, the court found a release ambiguous in part because it specifically released the resort of liability for all risks, including the use of ski lifts. *Id.* at 899. The release then stated the plaintiff assumed the inherent risks of skiing as set forth in Colorado's Ski Safety Act, a statute that explicitly states that use of ski lifts does not qualify as an "inherent risk." *Id.* Thus, the release conflicted with the relevant statutory language.

Here, by contrast, there is no conflict between the WRSA and the types of risks or injuries JHMR listed in the release. The WRSA does not exempt or identify specific inherent risks; it generally defines "inherent risks" as "those dangers or conditions which

9

are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Wyo. Stat. Ann. § 1-1-122(a)(i). And the release here, unlike the release in *Rowan*, does not incorporate by reference the WRSA. In light of these significant differences, *Rowan* does not support a finding of ambiguity here.

## 3. Overbreadth

Next, the Cunninghams make multiple arguments related to the alleged overbreadth of the release. First, the Cunninghams argue the release is ambiguous because "it relates to all 'activities' and all 'facilities' and all 'premises' on 'each and every day' against a wide array of entities and individuals." Because the exculpatory clause includes broad language covering all facilities and activities at the resort at any time of year, the Cunninghams conclude "[t]here is no way possible for a person to understand what this clause actually encompasses."

At the outset, we question whether the Cunninghams adequately preserved this argument. The Cunninghams' opposition to summary judgment contains only a passing reference to the issue:

> The []release language appears to apply to the signator's "presence on JHMR premises." Theoretically, if someone left the ski hill and came back for dinner at the resort and was injured as a result of [JHMR]'s negligence this release would apply. This is not clear or unambiguous or within [the] scope of renting skis.

And the Cunninghams presented no evidence in the district court of JHMR's ownership or operation of other facilities and activities at the resort. The Cunninghams instead attempt to introduce such evidence on appeal through their motion for judicial notice.

10

But even if we consider this issue, the Cunninghams' arguments fail on the merits. The release explicitly limits JHMR's liability for "any and all claims, demands, causes of action, liabilities, actions . . . arising directly or indirectly out of my use of the facilities, ski area or ski lifts at JHMR." Although this language is broad, there is nothing ambiguous about it. Indeed, the Wyoming Supreme Court rejected an analogous argument when it held that a release from liability for "legal claims or legal liability of any kind whether foreseen or unforeseen" meant precisely what it said and thus clearly barred a plaintiff's negligence claims. *Milligan*, 754 P.2d at 1068.

The Cunninghams also argue the release should be deemed void because it covers a broad range of potential injuries but is presented in a rental agreement, thus leading renters to believe they are releasing only claims for injuries caused by the rental equipment, while in fact, the release covers all injuries, including those unrelated to equipment. In support of their argument, the Cunninghams cite *Kolosnitsyn v. Crystal Mountain, Inc.*, in which the court expressed concern about a person "unwittingly" signing away his rights because the rental-agreement release might have applied to injuries related to the rental equipment alone or to injuries related to use of the ski area. No. C08-05035-RBL, 2009 WL 2855491, at *4 (W.D. Wash. Aug. 28, 2009) (unpublished).

But the decision in *Kolosnitsyn* was based on facts not present here. In *Kolosnitsyn*, the plaintiff rented equipment from a ski shop and while skiing at an adjoining resort suffered injuries not caused by his equipment. *Id.* at *1. When he sued the resort, it invoked a release the plaintiff had signed when renting his equipment, based

11

on the resort's ownership of the ski shop and the release's waiver of claims against "the ski/snowboard shop, its employees, [and its] *owners*." *Id.* at *1–2 (emphasis added). The court found the release unenforceable because it did not clearly identify the adjoining resort as the ski shop's "owner." *Id.* at *4. Thus, the plaintiff would not have known from the release itself that he was waiving claims against the resort, including for the resort's own negligence. *Id.*

Here, by contrast, the release expressly waives claims against JHMR itself—it bars "any and all claims," including those "arising directly or indirectly" from "use of the facilities, ski area or ski lifts at JHMR." Thus, *Kolosnitsyn* does not support the Cunninghams' position. Moreover, although neither we nor Wyoming courts have addressed this precise issue, we have concluded that an exculpatory release signed in conjunction with the rental of sporting equipment can bar claims for injuries arising out of participation in the sport but unrelated to the equipment. *See Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108, 1109, 1112–13 (10th Cir. 2002) (applying Colorado's four-factor test that Wyoming has since adopted and concluding a release signed in connection with a mountain-bike rental barred negligence claims against resort for biker's injuries unrelated to the bike or other rented equipment).

The Cunninghams also argue the release should be held invalid because it applies to skiers who rent equipment, but not to skiers who bring their own. Although this argument finds some support in the *Kolosnitsyn* decision, 2009 WL 2855491, at *4, it does not fit squarely within the four-factor framework established by Wyoming law. Rather, it seems to be a general appeal to public policy. While the Wyoming Supreme

12

Court does not enforce contracts that are contrary to public policy, it also "will not invalidate a contract entered into freely by competent parties on the basis of public policy unless that policy is well settled." *Andrau v. Mich. Wis. Pipe Line Co.*, 712 P.2d 372, 376 (Wyo. 1986) (internal quotation marks omitted). The Cunninghams have not shown a settled public policy in Wyoming that discourages releases like JHMR's. Moreover, the evidence shows JHMR requires its season-pass holders to sign releases identical or similar to the one signed by Mrs. Cunningham. We therefore reject this argument.

### 4. Mutual Mistake and Inherent Hazards

The Cunninghams next argue that even if the release is unambiguous, it does not bar their claims for two reasons. First, the Cunninghams maintain both they and JHMR believed the release applied only to injuries related to rental equipment and therefore the parties were mutually mistaken as to the release's scope. But the Cunninghams also concede they did not raise this argument before the district court. We therefore decline to address the argument because it has been forfeited and the Cunninghams did not argue plain-error review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).

Second, the Cunninghams briefly argue that, based on the reasoning of a Wyoming state district court in *Beckwith v. Weber*, Civ. Action No. 14726, the exculpatory language in the second paragraph of the release must be read to apply only to injuries arising from the "inherent hazards" discussed in the first paragraph of the release. But, as the district court concluded, *Beckwith* is distinguishable because the release there contained only a single sentence that did not mention a release of liability for negligence.

13

By contrast, the release here clearly and unambiguously bars negligence claims against JHMR, not just claims arising out of the inherent risks of skiing. And even if the release could be limited to the inherent risks identified in the first paragraph of the release, such risks include "collisions with . . . *man-made objects and features*." Because Mrs. Cunningham collided with a man-made trail sign, she cannot succeed on this argument, even if the release could be read to apply only to the identified inherent risks.

In sum, we agree with the district court that the release clearly and unambiguously bars the Cunninghams' claims. And because the ambiguity of the release was the only issue preserved for our review, we conclude the release is valid and enforceable under Wyoming law.

## B. *Willful and Wanton Conduct*

Finally, the Cunninghams argue the release is unenforceable because JHMR engaged in willful and wanton misconduct. *See Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1068 (Wyo. 1988) ("Where willful and wanton misconduct is shown, an otherwise valid release is unenforceable."). Wyoming sets a high bar for establishing willful and wanton misconduct.

> Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another.

*Hannifan v. Am. Nat'l Bank of Cheyenne*, 185 P.3d 679, 683 (Wyo. 2008) (emphasis omitted) (quoting *Weaver v. Mitchell*, 715 P.2d 1361, 1370 (Wyo. 1986)). It is "more aggravated than gross negligence." *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo.

14

1979). "In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm." *Cramer v. Powder River Coal, LLC*, 204 P.3d 974, 979 (Wyo. 2009) (citation omitted).

Here, there is no evidence from which a reasonable jury could conclude JHMR acted willfully or wantonly when it placed the trail sign with which Mrs. Cunningham collided. It is undisputed that the sign has been in the same spot in substantially the same form for over thirty years. Yet there was no evidence presented that anyone other than Mrs. Cunningham has collided with the sign in that time. Although the Cunninghams' experts criticized JHMR's choices in placing and constructing the sign, as the district court concluded, "[a]t best, the alleged failings related to the placement and construction of the sign are negligent, not willful and wanton behavior."

Moreover, the only case to which the Cunninghams draw an analogy— *Rowan v. Vail Holdings, Inc.*, 31 F. Supp. 2d 889 (D. Colo. 1998)—is clearly inapposite. *Rowan* involved a skier who died after colliding with a picnic deck (1) that was at the bottom of a race course on which skiers "attained speeds in excess of 120 kilometers per hour," *id.* at 892; (2) that was positioned such that skiers had "to make a hard left turn at the end of the course to avoid the deck," *id.* at 893–94; (3) that was unpadded, despite having been previously padded and despite available padding that easily could have been attached, *id.* at 893, 900; and (4) with which there had been several "close calls" and an actual injury on the same day the skier was killed and in the two days prior, *id.* at 900. In addition, the resort made the decedent and other skiers sign the release in the middle of the third day of their test runs, doing so only after receiving notice of multiple close calls and an actual

injury, and claiming it routinely required releases but without producing evidence to support this claim. *Id.* at 898, 900. The present circumstances bear no similarity to the facts in *Rowan*. Where the trail sign here had been in place without known incident for over thirty years prior to Mrs. Cunningham's accident, no reasonable jury could conclude JHMR engaged in willful and wanton misconduct by placing it there. Accordingly, the release is enforceable and bars the Cunninghams' claims.[6]

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of JHMR. And we DENY the Cunninghams' motion for judicial notice.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[6] Because Mr. Cunningham's claim for loss of consortium is derivative of Mrs. Cunningham's claims related to her injuries, his claim also fails. *Massengill*, 996 P.2d at 1137; *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987).

16