523 P.2d 803

**ALLISON STEEL MANUFACTURING CO., Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA, Honorable Lawrence W. Galligan, Division 4, Judge thereof, M. M. SUNDT CONSTRUCTION CO., an Arizona corporation; George Stecker; Stewart Klingerman; Ray Hindeman; Jerry G. Farr, Real Parties in Interest, Respondents.**

No. 2 CA–CIV 1623.

Court of Appeals of Arizona, Division 2.

June 27, 1974.

Rehearing Denied July 24, 1974.

Review Denied Sept. 24, 1974.

---

1. A.R.S. § 1–244 provides as follows: "No statute is retroactive unless expressly declared therein."

Everett, Bury & Moeller, P. C., by David C. Bury, Tucson, and Gerald Nabours, Certified Law Student under Rule 28(e) for petitioner.

Browder & Gillenwater, P. C., by Robert W. Browder, Phoenix, for real parties in interest.

## OPINION

HATHAWAY, Chief Judge.

This special action challenges the propriety of denying petitioner's motion for summary judgment on a third party complaint filed against it by the respondent real parties in interest, defendants in a pending lawsuit for personal injuries. If, as contended by petitioner, it was entitled to summary judgment on the third party complaint, appellate intervention via this special action procedure is appropriate. Chrysler Corporation v. McCarthy, 14 Ariz.App. 536, 484 P.2d 1065 (1971); Allison Steel Mfg. Co. v. Superior Court, 20 Ariz.App. 185, 511 P.2d 198 (1973).

Briefly, the posture of the litigation below is as follows. In February, 1971, plaintiff Salcido filed an amended complaint against various defendants including the real parties in interest. The complaint alleged that the plaintiff was employed by petitioner and was working on a construc-

tion project in which petitioner was a subcontractor and Sundt Construction was the prime contractor; that Stecker and Klingerman were employees of Sundt working at the construction site; that Hindeman and Farr were workers at the construction site; and that said defendants negligently and carelessly operated, maintained and controlled the construction site, failed to observe safety standards and rules, and negligently operated a crane resulting in severe injuries to the plaintiff.

Eleven months later a third party complaint was filed against petitioner setting forth two counts. Count One on behalf of all defendants alleged that pursuant to the provisions of a subcontract agreement between Sundt and petitioner, defendants were entitled to be indemnified if they, or any one of them, were found to be liable to the plaintiff.

Count Two of the third party complaint set forth a claim only by Sundt, Klingerman and Stecker. It further alleged that if said defendants, or any of them, were held liable to the plaintiff, such liability would arise because of the active and primary negligence of petitioner and its employees and not because of any active fault or active participation by said defendants in the conduct causing injury to the plaintiff, hence they would be entitled to be indemnified by petitioner. Cross-motions for summary judgment were filed and it was stipulated between the third party plaintiffs and the third party defendants that the court might consider, in ruling on the motion, a document entitled "AIA Document A 201 General Conditions of the Contract for Construction" and the document entitled "Subcontract Agreement" attached to a memorandum submitted below. Both motions for summary judgment were denied and petitioner now contends the denial of

its motion was erroneous in that (1) the contractual provisions for indemnity did not include the right to indemnification for negligent acts of the indemnitee and (2) the negligent conduct on the part of the defendants asserted by the plaintiff was not the type which would qualify for indemnity.[1]

The subcontract agreement between Sundt Construction and Allison Steel provided in pertinent part:

". . . Subcontractor agrees to bind and obligate himself, in the performance of this Subcontract, to the Contractor by the same terms, conditions, undertakings and obligations that the Contractor is bound and obligated to the Owner by the Principal Contract insofar as the terms thereof shall not be in conflict with the terms hereof."

Section 16 of the subcontract entitled "Additional Requirements" contains a provision whereby the subcontractor agreed to hold harmless the owner and contractor, their agents and employees, from "all liability, penalties, losses, damages, costs, expenses, causes of action, claims or judgments resulting from injury, harm or death to any person . . . arising out of, sustained or in any way connected with the performance of work under this Subcontract, or the furnishing of services, labor, equipment and materials by Subcontractor". The subcontractor agreed to indemnify the contractor for any claim for injuries to the subcontractor's employees "resulting from any cause whatsoever", and further agreed:

"(g) that he shall assume toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner, as set forth in the Principal Contract, General and Special Conditions, Drawings, Specifica-

1. The complaint alleged that the defendants "did so negligently and carelessly operate, maintain and control" the construction site and that the negligence of Sundt consisted of "failing to properly insulate its crane . . . failing to raise the wire or move them out of proximity to the work area . . . fail-

ing to disconnect service along the wires while persons were working in close proximity . . . failing to warn plaintiff of the hazard then and there existing . . . negligent and careless operation, control and maintenance over the premises in question."

tions and other documents hereinabove referred to, insofar as applicable, generally or specifically, to the materials to be furnished, the work to be performed and the responsibilities to be assumed under this Subcontract."

A provision of the principal contract between the owner and the contractor, provided:

"4.18 Indemnification

4.18.1 The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Contractor any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, *regardless of whether or not it is caused in part by a party indemnified hereunder.*" (Emphasis supplied)

Petitioner contends that the subcontract agreement does not include indemnity for losses occasioned by the negligence of Sundt and/or its employees—therefore, its motion for summary judgment on Count One of the third party complaint, based on contract, should have been granted. The real parties in interest, on the other hand, maintain that since § 4.18.1 of the general conditions, supra, was incorporated into the subcontract agreement, petitioner could be required to indemnify for losses occasioned by an indemnitee's negligence so long as the indemnitee's negligence was not the sole cause of injury.

■ In this jurisdiction, we are committed to the rule that a contract of indemnity will not be construed to cover losses to the indemnitee caused by his own negligence unless the intention is expressed in clear and unequivocal terms. Southern Pacific Company v. Gila River Ranch, Inc., 105 Ariz. 107, 460 P.2d 1 (1969); Royal Properties, Inc. v. Arizona Title Ins. & Tr. Co., 13 Ariz.App. 376, 476 P.2d 897 (1970); Allison Steel Mfg. Co. v. Superior Court, supra.

Petitioner has cited to us the California Supreme Court decision of Goldman v. Ecco-Phoenix Electric Corp., 62 Cal.2d 40, 41 Cal.Rptr. 73, 396 P.2d 377 (1964), wherein the court held that a subcontract providing that the subcontractor was to be bound to the general contractors in the same manner and to the same extent as the general contractors were bound to the owner under the general contract, to the extent of the work provided for in the agreement, was not an agreement to indemnify the general contractor against their own negligence. In *Goldman,* the general contract between the contractor and the owner provided that the contractor would indemnify and save harmless the owner from liability of every kind arising from the performance of a contract or work, regardless of responsibility for negligence. The subcontract agreement provided that the subcontractor would be bound to the contractor in the same manner and to the same extent as the contractor would be bound to the owner under the general contract, to the extent of work provided for in the subcontract agreement. The California Supreme Court in holding that the subcontractor had no obligation to indemnify the contractor against his own negligence, stated:

"In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms. And the extent of the purported indemnitor's liability must be determined from

an objective assessment of the language of the instrument." (41 Cal.Rptr. at 75, 396 P.2d at 379)

The court went on to point out that specific language to spell out an indemnification agreement may be found in many contracts and nothing had prevented the contractor from setting forth such provision in the subcontract agreement; and also that the contract between the owner and the contractor, i. e., the underlying agreement, contained such a specific provision requiring indemnification of the owner "regardless of responsibility for negligence". The provision in the subcontract agreement involved in *Goldman,* supra, is markedly similar to the provision (Sec. 16 set forth above) in the Allison-Sundt contract upon which the real parties in interest predicate their claim of a right to indemnity.

Just as here, the parties in *Goldman,* supra, reached diametrically opposed interpretations of the disputed provision. The California Supreme Court deemed it unnecessary to determine which interpretation was correct, stating:

"We conclude only that an indemnification agreement calling for financial protection against one's own negligence cannot rest upon language so loose and obscure as that of the instant contract. The parties themselves encounter a deep disagreement as to its meaning. In the special circumstances of this undertaking of the subcontractor to hold the contractor harmless for its own negligence and in the use of this printed form contract for that purpose, we hold that the imposition of the obligation must be clear and express." (41 Cal.Rptr. at 78, 396 P.2d at 382).

The general contractor, not the subcontractor, drafted the printed form of agreement upon which the real parties in interest rely for reimbursement for their own negligence. We do not have a situation where the terms of the agreement were arrived at by negotiations between the parties, as in Indenco, Inc. v. Evans, 201 Cal.App.2d 369, 20 Cal.Rptr. 90 (1962), relied upon by the real parties in interest. Since Sundt occupied the better bargaining position and drafted the printed form of agreement, we are inclined to construe it more strongly against Sundt's position. Be that as it may, we hold that the subcontract agreement failed to meet the stringent standard required in this jurisdiction: the intention to compensate the indemnitee for his own negligence must be expressed in "clear and unequivocal terms". Therefore, there was no contractual right of indemnity and petitioner's motion for summary judgment on Count One of the third party complaint should have been granted.

As to Count Two of the third party complaint, we also agree with petitioner that its motion for summary judgment should have been granted. It was alleged:

"At the time of the accident and injury to plaintiff Julian Salcido, Sundt had rented a mobile crane and the operator and oiler to Allison Steel and at said time and place the mobile crane and the operator and oiler were working under the direction, control and supervision of Allison Steel and its employees and were not subject to the direction, control or supervision of Sundt, Stewart Klingerman, George Stecker, or any of them.

If defendants and third party plaintiffs Sundt, Stewart Klingerman and George Stecker, or any of them, are held liable to plaintiff Julian Salcido, such liability will arise because of the active and primary negligence of Allison Steel and its employees and not because of any active fault or active participation by said defendant . . ."

Allison argues that even if the two Sundt employees were loaned to it and it had full control and supervision over both the men and the crane, Sundt could under no circumstances be entitled to indemnity from Allison. The complaint against Sundt, according to Allison's petition, alleged that Sundt "negligently and careless-

ly operated, maintained and controlled the construction site, failed to observe safety standards and rules."

In Busy Bee Buffet v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957), the leading case on non-contractual indemnity in this jurisdiction, the Supreme Court held that a landowner who breaches his duty to an invitee to maintain his premises in a reasonably safe condition, solely through the negligence of a co-tenant, was entitled to indemnity from the co-tenant. In City of Phoenix v. Kenly, 21 Ariz.App. 394, 519 P.2d 1159, 1161 (1974), Division One of this court summed up the rule as to implied indemnity as follows:

"In the cases interpreting Busy Bee, the Arizona Appellate Courts have held that there is no indemnity between joint tort-feasors enabling the one who is less negligent to get indemnity from the other for damages caused by the concurring negligent acts of both. Busy Bee and Crouse only permit indemnity when the party seeking indemnity was not personally at fault and did not actively participate in the wrong causing injury to a third party, but was nevertheless liable because of a legal duty to the third party for the conduct of the indemnitor who actively caused the injury." (Citations omitted)

In Pinal County v. Adams, 13 Ariz.App. 571, 479 P.2d 718 (1971), citing Sherk, Common Law Indemnity Among Joint Tortfeasors, 7 Ariz.L.Rev. 59, 62–64 (1965), we enumerated seven situations in which one, without active participation, might be held liable to a third party for the conduct of another which had actively caused the injury. One situation in which indemnity would lie is where "[t]he indemnitee (such as an owner or building contractor), solely through the negligence of the indemnitor (such as a contractor or subcontractor), breaches his nondelegable duty to furnish workmen or seamen with a reasonably safe place to work, or otherwise suffers loss solely by virtue of the indem-

nitor's negligence." (13 Ariz.App. at 572–573, 479 P.2d at 719–720).

Although our requirements for common law indemnity would be met under such circumstances, the courts of this state have explicitly and consistently held that a landowner or contractor owes no non-delegable duty to the employee of a contractor or subcontractor to provide a safe place to work. E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970); Parks v. Atkinson, 19 Ariz.App. 111, 505 P.2d 279 (1973); Fluor Corporation v. Sykes, 3 Ariz.App. 211, 413 P.2d 270 (1966); Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330 (1965). Therefore, if Sundt had no control or active role in the activities which led to plaintiff Salcido's injuries, it cannot be held liable to plaintiff under a theory that it owed him a "nondelegable" duty to maintain a safe place to work. If, on the other hand, Sundt is held liable for lack of or negligent supervision of the activities which caused the injury under a retained control theory (see Welker v. Kennecott Copper Company, supra), Sundt would have no right to indemnity against Allison since the former would actually have participated in the fault causing injury. Because our law would exempt Sundt from liability if it had no active role in the conduct causing the injury, the question of indemnity would never arise.

There is the possibility that Sundt might be held liable for breach of its duty, as a general contractor, to keep "joint working spaces" reasonably safe for workmen. In Fluor Corporation v. Sykes, 3 Ariz.App. 559, 560, 416 P.2d 610, 611 (1966) (opinion on motion for rehearing), this court held that "[a] general contractor in control of premises has certain duties to the employees of subcontractors which is usually likened to that of a possessor of land to invitees thereon." Although this theory of liability has never been examined or delineated in detail by an appellate court of this state, it is evident that it would not

operate to hold a landowner or contractor liable to the employee of a contractor or subcontractor if the former had no active role in bringing about the dangerous condition which caused the injury. To find such a liability would be to fly in the face of the rationale of the above-cited cases holding that a landowner or contractor owes no non-delegable duty to provide employees of subcontractors a safe place to work. Therefore, if Sundt is held liable for failure to keep joint working spaces reasonably safe for workmen, liability will necessarily be predicated upon some active role by Sundt in creating the dangerous condition. Under such circumstances, it would not be entitled to indemnity from Allison.

We find there is no possibility that Sundt could be held liable under these circumstances and at the same time be entitled to implied indemnity from Allison. Allison's motion for summary judgment as to the second count should therefore have been granted.

The respondent court is directed to enter an appropriate judgment in accordance with this opinion.

KRUCKER and HOWARD, JJ., concur.