152 P.3d 1227

**WEATHERGUARD ROOFING CO., INC.,**
**a defunct Arizona corporation,**
**Plaintiff/Appellant,**

**v.**

**D.R. WARD CONSTRUCTION COM-**
**PANY, INC., an Arizona corpo-**
**ration, Defendant/Appellee.**

**No. 1 CA–CV 05–0247.**

Court of Appeals of Arizona,
Division 1, Department E.

Feb. 27, 2007.

Schneider & Onofry, P.C. By Charles D. Onofry and Luane Rosen, Phoenix, Attorneys for Plaintiff/Appellant.

Turley, Swan & Childers, P.C. By Christopher J. Bork, and Bremer Whyte Brown & O'Meara, LLP By Jeffrey D. Holland, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

NORRIS, Judge.

¶ 1 Appellant, Weatherguard Roofing Co., Inc., was a subcontractor on a custom residential project. On appeal, it argues the superior court should not have denied its motion to stay an arbitration proceeding between it and the general contractor on the project, Appellee, D.R. Ward Construction Co., Inc. The superior court concluded that because a clause in the construction contract between Ward and the project owners providing for binding arbitration had been incorporated by reference in the subcontract between Ward and Weatherguard, Weather-

guard was bound to participate in the arbitration. For reasons that follow, we agree with the superior court and affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 1993, Ward signed a contract to construct a home for John and Jean Rae Gaskin. The parties signed an American Institute of Architects form entitled "Abbreviated Form of Agreement" ("prime contract"). Ward had previously worked with Weatherguard and asked it to bid on some aspects of the project. Ward and Weatherguard later executed three subcontracts (collectively, the "subcontract") by which Weatherguard agreed to perform waterproofing and roofing and to install copper on various structural elements. Construction proceeded, and Weatherguard performed its work. The house was completed in June 1995.

¶ 3 In September 2002, the Gaskins notified Ward, various subcontractors, and their insurers of a claim that construction defects had caused water intrusion and mold damage to the house. Ward in turn notified Weatherguard that some of the alleged defects concerned Weatherguard's work and asked for indemnification and a defense.

¶ 4 In May 2003, the Gaskins served a demand for arbitration on Ward and sought almost $7 million in damages.[1] An arbitrator was appointed to handle the dispute between the Gaskins and Ward. In turn, because the contracts between Ward and the subcontractors required the subcontractors to indemnify[2] Ward for claims arising out of or resulting from the subcontractors' work, Ward asserted the subcontractors were liable for the defects alleged by the Gaskins and demanded indemnification from and arbitration with the subcontractors. Ward asserted Articles 30.1 and 30.2[3] of

---

1. The prime contract between the Gaskins and Ward required all claims or disputes between them "arising out of or relating to the" contract or "the breach thereof" to be decided by arbitration.

2. Article 10.1 of the general conditions to the subcontract required Weatherguard to "defend, indemnify, and hold [Ward and the Gaskins] ... harmless from all claims ... arising out of or resulting from Subcontractor's performance of the Work...."

3. Articles 30.1 and 30.2 stated:

    30.1 In the event Contractor and Owner or others arbitrate matters relating to this Subcontract, it shall be the responsibility of the Subcontractor to prepare and present Contractor's case, to the extent the proceedings are related to Subcontractor's claims under this Subcontract....

    30.2 Should Contractor enter into arbitration with Owner or others regarding matters relating to this Subcontract, Subcontractor

the subcontract's "general conditions," which were contained in a document separate from—but referenced in—the subcontract, gave Ward the right to demand arbitration and required the subcontractors to "prepare and present Contractor's case, to the extent the proceedings are related to Subcontractor's claims under this Subcontract." Weatherguard responded to Ward's demand and asserted no contract or rule required it to participate in the arbitration between Ward and the Gaskins, but stated it would voluntarily participate without waiving its right to seek a judicial determination that it was not required to submit to arbitration. Weatherguard also suggested that the general conditions had not been attached to the subcontract, and, thus, had not become part of the subcontract.

¶ 5 Before the arbitration took place, Ward settled with the Gaskins. It also settled most of its claims against the subcontractors, excluding those against Weatherguard and one other subcontractor. After the settlement, Weatherguard requested the superior court to stay the arbitration, asserting Weatherguard had not agreed to arbitrate any disputes between it and Ward.

¶ 6 The superior court denied Weatherguard's request for a stay. Weatherguard appealed. We have jurisdiction over this appeal pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B)(2003).

## DISCUSSION

¶ 7 On appeal, Weatherguard argues, as it did in the superior court, that it was not contractually obligated to arbitrate Ward's indemnity claim.[4] It argues, first, that the general conditions never became part of its subcontract with Ward; second, that even if the general conditions became part of the subcontract, the general conditions did not incorporate by reference, and thus did not bind Weatherguard to, the arbitration provision in the prime contract; and third, that

will agree, if requested by Contractor, to join and present its claims in the arbitration proceedings with Contractor and Owner, but in any event, Subcontractor shall be bound by the result of the arbitration with Owner to the same degree as Contractor.

because the subcontract contained express provisions governing arbitration, which Ward admitted did not require Weatherguard to arbitrate Ward's indemnity claim, these "more specific" provisions controlled the "more general" arbitration provision in the prime contract. For the following reasons, we disagree with each argument.

### I. Incorporation of the General Conditions into the Subcontract

¶ 8 Weatherguard first argues the general conditions never became part of its subcontract with Ward. To explain the requirements for incorporation by reference, Weatherguard cites our decision in *United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 268, 681 P.2d 390, 420 (App.1983), which states:

It is a basic rule of contract construction that to incorporate by reference: "[T]he reference must be *clear and unequivocal* and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties. . . .

(citing 17A C.J.S. *Contracts* § 299 at 136 (1963)(emphasis and alterations in original)). But, our discussion in *United California Bank* of the requirements for incorporation did not stop there. We went on to state: "While it is not necessary that a contract state specifically that another writing is 'incorporated by this reference herein,' the context in which the reference is made must make clear that the writing is part of the contract." *Id.*

¶ 9 Here, the last page of the subcontract stated, "The attached General Conditions are part of the subcontract." This statement made clear that the separate general conditions were part of the subcontract. The statement thus worked an incorporation by reference.

4. Interpretation of a contract presents a question of law for the superior court that we review de novo. *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634, ¶ 5, 2 P.3d 1276, 1279 (App.2000).

¶ 10 Despite the clarity of the words used to incorporate by reference the general conditions into the subcontract, Weatherguard nevertheless argues incorporation never occurred because Ward failed to attach a copy of the general conditions to the subcontract.[5] However, whether the general conditions were attached to the subcontract is irrelevant. As we stated in *United California Bank*, "physical attachment is not necessary *if* the document ... is *clearly and unambiguously* incorporated by reference." *Id.* at 268, 681 P.2d at 420 (emphasis in original). Thus, even if Ward failed to attach a copy of the general conditions to the subcontract, Weatherguard was on notice of the general conditions, and their incorporation into the subcontract.[6]

### II. Incorporation of the Prime Contract's Arbitration Provision into the Subcontract

¶ 11 Weatherguard next argues the general conditions failed to incorporate by reference the prime contract's arbitration provision into the subcontract. Article 2.1 of the general conditions determines this issue. Article 2.1 stated:

> The Contract Documents consist of the Subcontract (including the cover page, *general conditions* and all exhibits hereto); all Work Orders or Notices to Proceed issued pursuant thereto; all addenda issued prior to and all approved Change Orders or other modifications issued after the execution of the Subcontract, the plans and specifications, working drawings and details pertaining to the Work; *the terms and conditions of the Contract between the Owner and Contractor for the construction of the Project (the "General Contract"). Subcontractor shall assume and agree to perform all obligations of Contractor in the General Contract, and any amendments thereof, insofar as they pertain to the Work, and Subcontractor shall assume toward Contractor all of the obligations and responsibilities which Contractor assumes toward Owner under the General Contract.* Subcontractor shall be bound by the determination of any disputed question made, pursuant to the provisions of the General Contract. *Contractor shall have the same rights and privileges as against Subcontractor as the Owner in the General Contract has against Contractor.*

(Emphasis added.)

¶ 12 In our view, the emphasized language incorporated the arbitration provision of the prime contract into the subcontract. Pursuant to these provisions, Weatherguard assumed toward Ward the duties—that is, the "obligations" and "responsibilities"—Ward owed the Gaskins. And, of critical importance, Ward was given the same "rights and privileges" against Weatherguard the Gaskins had against Ward. Under the prime contract, the Gaskins were given the right and privilege to demand arbitration of any dispute with Ward. Accordingly, Ward enjoyed the same right and privilege to demand arbitration with Weatherguard. Simply put, because the prime contract required Ward to submit to arbitration, that provision, as incorporated into the subcontract through Article 2.1, required Weatherguard to submit to arbitration as well.[7]

¶ 13 Nevertheless, Weatherguard asserts we should not construe Article 2.1 as incorporating the arbitration provision of the prime contract into the subcontract because the language of incorporation was not sufficiently specific. Under Weatherguard's view, because a party cannot be compelled to arbitrate a dispute unless it has agreed to do so,

---

5. We note Ward claimed a copy was attached to each subcontract.

6. The issue of physical attachment was the only issue of fact raised by Weatherguard in the superior court. Weatherguard did not assert that it was unable to understand any of the provisions of the general conditions, or that the general conditions were inconsistent with any pre-contractual negotiation between them.

7. Weatherguard also argues that the arbitration provision of the prime contract was not incorporated by reference into the subcontract because Ward failed to attach a copy of the prime contract to the subcontract. However, as discussed above, physical attachment is unnecessary for incorporation by reference. Here, the subcontract unambiguously referenced the prime contract, and, indeed, Article 2.1 specifically stated that the Contract Documents included the prime contract.

we should demand extraordinary clarity before we find an agreement to arbitrate has been incorporated by reference. In making this argument, Weatherguard relies on an Arizona case concerning indemnification, and on case law from other jurisdictions. We find Weatherguard's reliance on these authorities misplaced.

### A. Arizona Law

¶ 14 In support of its argument that an arbitration provision in one agreement cannot be incorporated by reference into another agreement absent a specific reference to arbitration, Weatherguard relies on *Allison Steel Mfg. Co. v. Superior Court*, 22 Ariz. App. 76, 523 P.2d 803 (1974). There, the issue before the court was whether a "specific" indemnity provision, contained in a prime contract that obligated the contractor to indemnify the owner from the consequences of the owner's own negligence, was incorporated by reference into the subcontract between the general contractor and the subcontractor. The incorporating language required the subcontractor to "assume" towards the contractor "all the obligations and responsibilities" the contractor had assumed towards the owner. This court held this and other language in the subcontract failed to meet the "stringent standard" that the "intention to compensate the indemnitee for his own negligence must be expressed in 'clear and unequivocal terms.'" *Id.* at 80, 523 P.2d at 807.

¶ 15 Weatherguard's reliance on *Allison Steel* is misplaced. First, consistent with Arizona case law, *Allison Steel* required the language in the subcontract to meet a more demanding level of specificity because the issue presented was whether the subcontractor had agreed to indemnify the general contractor for the general contractor's own negligence. *Washington Elementary Sch. Dist. No. 6 v. Baglino Corp.*, 169 Ariz. 58, 61, 817 P.2d 3, 6 (1991)(contract indemnifying party against its own negligence will be strictly construed). The demanding level of specificity required by the court in *Allison Steel* was, thus, a function of context and is not necessarily transferable to other situations, such as the situation presented here. *See Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Mgmt., Inc.*, 165 Ariz. 25, 28, 795 P.2d 1308, 1311 (App.1990)("General principles of contract law ... control a court's determination of whether a valid arbitration provision exists.").

¶ 16 Second, in *Baglino*, the Arizona Supreme Court rejected a mechanistic approach to determining whether an indemnity provision protects an indemnitee from his own negligence, explaining there is "no requirement that the term negligence actually be used, or that specific reference be made to liability arising out of the indemnitee's negligence." 169 Ariz. at 61, 817 P.2d at 6. The court looked to the words used by the parties to determine whether they were "broad enough" to encompass the indemnitee's own negligence. *Id.* at 61–62, 817 P.2d at 6–7. The court required clarity, not any particular word or phrase. *See also Grubb & Ellis Mgmt. Servs. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 88, ¶ 17, 138 P.3d 1210, 1215 (App.2006).

¶ 17 The "must mention arbitration" approach to incorporation by reference Weatherguard asks us to adopt is the type of mechanistic approach to contract interpretation rejected in *Baglino*. Language incorporating by reference an arbitration provision from another contract must be clear, and such language must be interpreted to carry out the intentions of the parties. But, contrary to Weatherguard's argument, no specific word or phrase—such as a specific reference to arbitration—is required.

¶ 18 Therefore, when a court is asked to interpret a contract, whether the issue concerns arbitration or indemnification, it must examine the language used by the parties and construe their words as imposing obligations or granting rights that "reasonably appear to have been intended by the parties." *Grubb & Ellis*, 213 Ariz. at 88, ¶ 17, 138 P.3d at 1215. Just as there is no requirement that any specific word or phrase be used to protect an indemnitee against his own negligence, an arbitration clause contained in one agreement may be incorporated by reference in another agreement even if the incorporating language does not specifically mention arbitration. Such an omission is not fatal if the parties' agreement to resort to arbitration is otherwise clear.

### B. Case Law from Other Jurisdictions

¶ 19 Relying on case law from other jurisdictions, Weatherguard asserts we should hold as a matter of law that an arbitration provision cannot be incorporated by reference unless the incorporating language specifically references arbitration.

¶ 20 In support of this argument, Weatherguard cites *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d 901, 907 (Ind.2004). There, the subcontract did not mention arbitration but stated the prime contract was part of the subcontract "as applicable to the work stated therein." *Id.* at 907. The court found this language limited the incorporation of the prime contract to only the provisions that pertained to the work. *Id.* at 908.

¶ 21 *MPACT* is distinguishable. The relevant language in *MPACT* limited the subcontract's incorporation of the prime contract to only those sections "applicable to the work stated therein." That is not the case here. Although Article 2.1 required Weatherguard to perform all of Ward's obligations in the general contract "insofar as they pertain to the work," Article 2.1 also stated: "Subcontractor shall assume toward Contractor all of the obligations and responsibilities which Contractor assumes toward Owner under the General Agreement" and "Contractor shall have the same rights and privileges as against Subcontractor as the Owner in the General Contract has against Contractor." As discussed above, this language granted Ward the same rights and privileges against Weatherguard as the Gaskins had against Ward, and those rights and privileges included arbitration.

¶ 22 Weatherguard also relies on cases applying New York law. In New York, "general incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind the subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor." *CooperVision, Inc. v. Intek Integration Techs., Inc.,* 7

Misc.3d 592, 794 N.Y.S.2d 812, 819 (N.Y.Sup.2005)(quoting *Bussanich v. 310 E. 55th St. Tenants,* 282 A.D.2d 243, 723 N.Y.S.2d 444 (2001)). Further, in New York, "clauses relating only to the resolution of disputes are not incorporated by a mere general incorporation clause; instead clauses of this kind must be incorporated by language 'sufficiently specific' to assure that the parties intended that they apply." *CooperVision,* 794 N.Y.S.2d at 819 (citation omitted).

¶ 23 In our view, New York's approach to incorporation by reference in the construction law context does not square with Arizona law and this state's approach to incorporation by reference. The level of specificity required in New York is simply not required in Arizona. Further, the New York approach, which allows incorporation by reference of clauses pertaining to the scope, quality, or manner of work but disallows incorporation by reference of a clause pertaining to the way a dispute over that work should be resolved, strikes us as artificial and contrary to this state's general policy favoring arbitration. *S. Cal. Edison Co. v. Peabody W. Coal,* 194 Ariz. 47, 51, ¶ 11, 977 P.2d 769, 773 (1999)(Arizona law "favors arbitration of disputes that the parties have agreed to arbitrate.").

¶ 24 In contrast to New York's approach, we find persuasive the reasoning of cases holding that when a subcontractor agrees to assume the obligations imposed on the general contractor by the prime contract, and the prime contract requires arbitration of disputes between the general contractor and the owner, disputes between the contractor and the subcontractor are similarly subject to arbitration. *See, e.g., Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 979 (4th Cir.1985)(language requiring subcontractor to assume liabilities imposed on contractor in conjunction with general conditions requiring arbitration between contractor and owner required arbitration between subcontractor and contractor; applying Federal Arbitration Act); [8] *J.S. & H. Constr. Co.*

---

8. The subcontract stipulated that the prime contract's general conditions were part of the subcontract, and "in connection with, the Work, the

Subcontractor shall be bound by, and expressly assumes for the benefit of the Contractor, all obligations and liabilities which the Contract

*v. Richmond County Hosp. Auth.*, 473 F.2d 212, 216 (5th Cir.1973)(arbitration provision between contractor and owner incorporated by reference as between contractor and subcontractor; applying Federal Arbitration Act); [9] *Vespe Contracting Co. v. Anvan Corp.*, 399 F.Supp. 516 (E.D.Pa.1975)(arbitration provision incorporated by reference required arbitration between contractor and subcontractor; applying inherent power of the court); [10] *Slaught v. Bencomo Roofing Co.*, 25 Cal.App.4th 744, 30 Cal.Rptr.2d 618, 622 (1994)(because prime contract mandated arbitration and subcontractor assumed "the same obligations and responsibilities with regards to his performance under the subcontract, that contractor assume[ed]" towards owner, subcontractor required to participate in arbitration).

¶ 25 Although these cases are not controlling in Arizona, we find their approach compatible with our public policy of encouraging arbitration and our rules allowing incorporation by reference. Article 2.1 incorporated by reference the prime contract's arbitration provision into the subcontract.[11]

### III. Arbitration and Litigation Provisions in the Subcontract

#### A. References to Litigation in the Subcontract Did Not Preclude Arbitration

■ ¶ 26 Weatherguard next asserts that, unlike the prime contract, the subcontract envisioned litigation as the means to settle disputes between it and Ward. It cites Article 32.6 of the general conditions: "If either party becomes involved in litigation arising out of the Contract Documents or the performance thereof, the court in such litigation . . . shall award reasonable attorney's fees, expert fees and witness fees to the prevailing party."

■ ¶ 27 In interpreting a contract, we attempt to reconcile and give meaning to all its terms. *Gfeller v. Scottsdale Vista North Townhomes Ass'n*, 193 Ariz. 52, 54, ¶ 13, 969 P.2d 658, 660 (App.1998). Nothing in the wording of Article 32.6 reflects the parties intended to rely on litigation to the exclusion of arbitration, particularly in light of the express arbitration provisions in both the subcontract and prime contract. As Ward points out, Article 32.6 is not absolute, but conditional, and on its face states only that if the parties become involved in litigation, the prevailing party will be entitled to request its attorneys' fees in addition to expert and witness fees. Weatherguard does not explain how Article 32.6 can reasonably be read to foreclose arbitration between it and Ward, and thus we reject this argument.

#### B. References to Arbitration in the Subcontract Did Not Preclude Arbitration between Ward and Weatherguard

■ ¶ 28 Weatherguard also argues that even if the prime contract's arbitration provision was incorporated by reference, specific language in Article 30 of the general conditions controls over the prime contract's more general arbitration provision. *See Norman v. Recreation Ctrs. of Sun City, Inc.*, 156 Ariz. 425, 428, 752 P.2d 514, 517 (App.1988)(if

Documents impose upon the Contractor." *Maxum Founds., Inc.*, 779 F.2d at 979.

9. The subcontract required the subcontractor "to be bound to the Contractor by all of the terms of the agreement between the Contractor and the Owner and by the Contract Documents and to assume toward the Contractor all of the obligations and responsibilities that the Contractor by those instruments assumes toward the Owner." *J.S. & H. Const. Co.*, 473 F.2d at 214, n. 3.

10. The subcontract stated, "Subcontractor shall be bound to Contractor by the terms of the Subcontract Documents and shall assume towards Contractor all the obligations that Contractor by the terms thereof insofar as applicable to this Subcontract Agreement assumes toward owner." *Vespe*, 399 F.Supp. at 523, n. 4.

11. Our decision in this case is narrow. Excluding its argument about attachment, *see supra* n. 6, Weatherguard raised no issue of fact concerning the meaning of Article 2.1. Thus, we are not presented with a situation that required fact-finding to determine the intent of the contracting parties. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 159, 854 P.2d 1134, 1145 (1993)(issue of intent of contracting parties properly submitted to jury when parties offered conflicting interpretations and extrinsic evidence regarding what occurred and inferences to be drawn from the events disputed).

two contract clauses are inconsistent, the more specific qualifies the more general). Weatherguard asserts that because Articles 30.1 and 30.2 contemplated Weatherguard's participation in an arbitration if the Gaskins and Ward were involved in an arbitration, and Article 32.6 envisioned litigation of any disputes between Ward and Weatherguard, we should construe Article 2.1 as being qualified by these provisions and hold that Weatherguard was only required to participate in an arbitration if there was an arbitration of a dispute between Ward and the Gaskins.

¶ 29 But the rule of construction Weatherguard relies on requires that the clauses be inconsistent. We do not see any inconsistencies between Articles 30.1, 30.2, and 32.6, on the one hand, and the prime contract's arbitration provision as incorporated in the subcontract by Article 2.1, on the other hand.

¶ 30 First, as explained above, on its face, Article 32.6 does not preclude arbitration. Second, the arbitration provisions contained in Articles 30.1 and 30.2, and as incorporated by Article 2.1, apply to different situations. Articles 30.1 and 30.2 required Weatherguard to participate in arbitration if the Gaskins and Ward were arbitrating a dispute between themselves (and then only if certain requirements were met). In comparison, the arbitration provision of the prime contract, as incorporated into the subcontract by Article 2.1, required Weatherguard to submit to arbitration with Ward even if Ward and the Gaskins were not arbitrating any disputes between themselves.

¶ 31 A similar situation was presented in *Slaught*. There, a dispute arose between a general contractor and the owner of the project. The matter was submitted to arbitration pursuant to a provision in the prime contract that required any dispute arising out of the work to be arbitrated. Subsequently, the contractor demanded that the subcontractors participate in the arbitration because the owner had asserted that the contractor had negligently failed to properly

supervise them. The subcontractors refused to do so. *Slaught*, 30 Cal.Rptr.2d at 619.

¶ 32 The subcontracts contained a specific provision requiring arbitration of any dispute between the general contractor and the subcontractor. It did not require the subcontractors to participate in an arbitration of any dispute between the general contractor and the owner. However, it also contained a provision that gave the contractor all rights and remedies reserved to the owner under the contract documents.[12]

¶ 33 The court held that even though the subcontracts contained their own arbitration clause, the subcontractors were still obligated to submit to arbitration, as the contractor had demanded. The court explained the arbitration provisions of the subcontract were designed to deal with disputes solely between the contractor and the subcontractors, while the arbitration provision of the general contract, as incorporated in the subcontracts, governed disputes involving the contractor, subcontractors, and owner. *Id.* at 622.

¶ 34 Here, as in *Slaught*, the arbitration provision in the general conditions and the arbitration provision in the prime contract, as incorporated by reference in the subcontract, were designed to cover different situations. Articles 30.1 and 30.2 did not preclude arbitration between Ward and Weatherguard.

## CONCLUSION

¶ 35 Because Weatherguard's subcontract with Ward expressly incorporated the general conditions, and the general conditions incorporated the arbitration provision of the prime contract, Weatherguard was required to arbitrate Ward's indemnity claim against it. We thus affirm the superior court's order denying Weatherguard's request for a stay of arbitration.

¶ 36 As the prevailing party on appeal, Ward has requested an award of its reason-

---

12. The subcontract stated: "All rights and remedies reserved to Owner under the Contract Documents shall apply to and be possessed by Con-

tractor in its dealings with Subcontractor." *Slaught*, 30 Cal.Rptr.2d at 620.

able attorneys' fees on appeal under either Article 32.6 of the subcontract or A.R.S. § 12–341.01(A). Pursuant to A.R.S. § 12–341.01(A), we grant Ward's request subject to compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and DIANE M. JOHNSEN, Judge.